UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AXIS SURPLUS INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:12-CV-2419-G |
| HALO ASSET MANAGEMENT, LLC, ET AL., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the plaintiff, AXIS Surplus Insurance

Company ("the plaintiff" or "AXIS") for summary judgment (docket entry 26).  For

the reasons stated below, the motion is granted as to the plaintiff's duty to defend

and denied as to the plaintiff's duty to indemnify.

## I. BACKGROUND

This is a declaratory judgment action to determine whether AXIS has a duty to

defend and indemnify Halo Companies, Inc., Halo Asset Management, LLC, Halo

Portfolio Advisors, LLC, Brandon Cade Thompson, Paul Williams, Reif Chron, Tony

Chron, Halo Asset Management Genpar II, LLC, and Halo Group, Inc. (collectively, "the Halo defendants") in a suit styled *Bruce Berg et al. v. Halo Companies, Inc. et al.* (cause number 11-15415) in the 191st Judicial District Court of Dallas County, Texas ("the underlying action"). *See generally* First Amended Original Complaint ("Complaint") (docket entry 4). Bruce Berg, Stuart Cartner, Kevin Doyle, Walter Haydock, Edward Leh, Kevin Murphy, Philip Schantz, DAIS Partners, LP, Singer Bros., LLC, Skeleton Lake, LLC, and Wildcat Lake Partners (collectively, "the Claimant defendants") brought the underlying action against the Halo defendants. *See generally* Appendix in Support of Plaintiff's Motion for Summary Judgment, Exhibit B, Second Amended Petition in Underlying Action ("Petition") (docket entry 27-1).

The underlying action arises out of a scheme in which the Halo defendants and certain third parties were supposed to use the Claimant defendants' funds to purchase residential mortgage notes in order to process, service, and repackage the mortgages. Brief in Support of Claimants' Response and Opposition to Plaintiff's Motion for Summary Judgment ("Response Brief") ¶ 5 (docket entry 32). The Halo defendants and the third parties made representations to the Claimant defendants. *Id.* ¶ 12. Third parties James G. Temme ("Temme") and Stewardship GP represented that they would purchase nonperforming residential mortgages, restructure their terms, and reconstitute the mortgages into performing loans. *Id.* Halo Companies, Inc.

- 2 -

represented that it would process and service the mortgages as part of a strategic alliance with Temme and Stewardship GP.  *Id.*  The Claimant defendants relied on the Halo defendants' and the third parties' representations and invested almost $5 million between December 2010 and August 2011.  Complaint ¶ 27.

In the underlying action, the Claimant defendants allege that the proposed assets were never purchased and their invested funds never returned.  Petition ¶ 99. As a result, the Claimant defendants sued the Halo Defendants for damages of $4,898,157.00.  *Id.*  The Claimant defendants complain that, among other things, the Halo defendants negligently failed to perform due diligence on their partnership with Temme and Stewardship GP, failed to ensure that Temme was purchasing mortgages, failed to inform the Claimant defendants that the invested funds were not being used to purchase the intended assets, and made false assurances regarding their intent to use the invested funds to purchase or manage the mortgages.  Petition ¶¶ 104, 121, 123, 152.  The Claimant defendants assert claims for fraudulent inducement, negligent misrepresentation, fraud, breach of fiduciary duty, negligence, breach of contract, unjust enrichment, and violation of the Texas Securities Act.  *See generally* Petition.  Further, the Claimant defendants ask for exemplary damages and attorneys' fees and make a demand for an accounting.  *Id.*

The defendants Halo Companies, Inc. and Halo Group, Inc. are named insureds on a professional liability policy issued by AXIS ("the AXIS policy").

Complaint ¶ 31; *see generally* Appendix in Support of Plaintiff's Motion for Summary Judgment, Exhibit A, AXIS PRO Miscellaneous Professional Liability Policy No. ECN 000006681001, policy period November 1, 2010 to November 1, 2011 ("Policy"). For the purposes of this motion for summary judgment, the plaintiff assumes that all of the Halo defendants are insureds under the AXIS policy.  Plaintiff's Brief in Support of Motion for Summary Judgment ("Motion for Summary Judgment Brief") at 5.  On November 29, 2011 and February 7, 2012, the Halo defendants tendered the underlying action to AXIS, demanding that AXIS defend and indemnify the Halo defendants against the claims asserted by the Claimant defendants.  Complaint ¶¶ 29-30.  AXIS denied both requests on the grounds that the allegations in the underlying action were not covered under the AXIS policy.  *Id.* ¶ 30.

On July 18, 2012, AXIS filed this suit seeking a declaratory judgment that it does not have a duty to defend or indemnify the Halo defendants in the underlying action.  *See generally* Original Complaint (docket entry 1).  The Claimant defendants have been named as defendants in this suit since they are potential judgment creditors under the AXIS policy.  Complaint ¶ 37.

On February 8, 2013, AXIS filed this motion for summary judgment.  *See generally* Plaintiff's Motion for Summary Judgment (docket entry 26).  AXIS argues that it has no duty to defend because the claims in the underlying action are not covered under "Insured Services" as defined in the policy.  Motion for Summary

- 4 -

Judgment Brief at 7-12.  In the alternative, AXIS argues that the claims fall within

applicable exclusions to coverage.  *Id.* at 12-14.  For the same reasons, AXIS asserts

that there is no duty to indemnify.  *Id.* at 14-15.

## II.  ANALYSIS

### A.  Legal Standard

#### 1.  *Summary Judgment Standard*

Summary judgment is proper when the pleadings and evidence on file show

that no genuine issue exists as to any material fact, and that the moving party is

entitled to judgment as a matter of law.  FED. R. CIV. P. 56.[*]  "[T]he substantive law

will identify which facts are material."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).  The movant makes such a showing by informing the court of the basis

of its motion and by identifying the portions of the record which reveal there are no

genuine material fact issues.  See *Celotex Corporation v. Catrett*, 477 U.S. 317, 323

(1986).  Once the movant makes this showing, the nonmovants must then direct the

court's attention to evidence in the record sufficient to establish that there is a

genuine issue of material fact for trial.  *Id.* at 323-24.  To carry this burden, the

opponents must do more than simply show some metaphysical doubt as to the

---

[*]     The disposition of a case through summary judgment "reinforces the
purpose of the Rules, to achieve the just, speedy, and inexpensive determination of
actions, and, when appropriate, affords a merciful end to litigation that would
otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190,
1197 (5th Cir. 1986).

material facts. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). Instead, they must show that the evidence is sufficient to support a resolution of the factual issue in their favor. *Anderson*, 477 U.S. at 249. All of the evidence must be viewed, however, in a light most favorable to the motion's opponents. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

2. *Insurance Policy Interpretation Under Texas Law*

The parties agree that Texas law applies to this diversity case. Motion for Summary Judgment Brief at 5; Response Brief ¶ 17; see generally *Erie Railroad Company v. Tompkins*, 304 U.S. 64 (1938). Texas courts interpret insurance contracts according to the "rules of interpretation and construction which are applicable to contracts generally." *National Union Fire Insurance Company of Pittsburgh, Pennsylvania v. CBI Industries, Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). "The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument." *Id.* (citation omitted). In determining the intent of the parties, the court construes the policy to give effect to each of its terms and to avoid rendering any term meaningless. *Ideal Mutual Insurance Company v. Last Days Evangelical Association, Inc.*, 783 F.2d 1234, 1238 (5th Cir. 1986) (citation omitted).

In construing a contract, the court must determine whether its meaning is ambiguous. "Whether a contract is ambiguous is a question of law for the court to

decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *CBI Industries*, 907 S.W.2d at 520. A written contract is ambiguous if its language "is subject to two or more reasonable interpretations" but is not ambiguous if it is "so worded that it can be given a definite or certain legal meaning." *Id*. Mere disagreement between the parties about the correct interpretation of the term will not render the term ambiguous, nor will it transform the issue of law into an issue of fact. *D.E.W., Inc. v. Local 93, Laborers' International Union of North America*, 957 F.2d 196, 199 (5th Cir. 1992) (citations omitted).

Where a policy term is ambiguous, the court will construe that term in favor of the insured. *Toops v. Gulf Coast Marine Inc.*, 72 F.3d 483, 486 (5th Cir. 1996) (quoting *Adams v. John Hancock Mutual Life Insurance Company*, 797 F. Supp. 563, 567 (W.D. Tex. 1992), *aff'd*, 49 F.3d 728 (5th Cir. 1995)). In addition, when construing a policy term that excludes or limits coverage, the court must adopt any reasonable interpretation of the exclusion urged by the insured, even if the interpretation of the insurer appears more reasonable or a more accurate reflection of the parties' intent. *Id.* These rules of construction, however, apply only when the terms of the policy are "susceptible to several reasonable constructions." *Ranger Insurance Company v. Bowie*, 574 S.W.2d 540, 542 (Tex. 1978) (citations omitted).

3. *Duty to Defend*

Texas follows the "eight-corners" rule of insurance contract interpretation. See, *e.g.*, *GuideOne Elite Insurance Company v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). This rule instructs courts to determine whether an insurer has a duty to defend based solely on the language contained within the four corners of the insurance policy and the allegations contained within the four corners of the plaintiff's pleadings. *Allstate Insurance Company v. Disability Services of the Southwest, Inc.*, 400 F.3d 260, 263 (5th Cir. 2005); *National Union Fire Insurance Company of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (per curiam). In this case, the court looks to the four corners of the AXIS policy and the four corners of the underlying action filed by the Claimant defendants against the Halo defendants. If the pleadings allege facts stating a cause of action that potentially falls within the insurance policy's scope of coverage, the insurer has a duty to defend. *Liberty Mutual Insurance Company v. Graham*, 473 F.3d 596, 600 (5th Cir. 2006). The duty is determined based on the presumption that the allegations in the plaintiff's pleadings are true. *Disability Services of the Southwest*, 400 F.3d at 263; *Fielder Road Baptist Church*, 197 S.W.3d at 308. The insured bears the initial burden of showing that there is coverage, while the insurer bears the burden of showing that any exclusion in the policy applies. *Trinity Universal Insurance Company v. Employers Mutual Casualty Company*, 592 F.3d 687, 691-92 (5th Cir. 2010). "If an insurer has a

- 8 -

duty to defend its insured against any portion of the underlying suit, then the insurer is required to defend the entire suit." *General Star Indemnity Company v. Gulf Coast Marine Associates, Inc.*, 252 S.W.3d 450, 455 (Tex. App.--Houston [14th Dist.] 2008, pet. denied).

A pair of countervailing considerations guides the court's review of the facts alleged within the four corners of the underlying pleadings. On the one hand, "the insurer's duty to defend is limited to those claims actually asserted in an underlying suit" and does not extend to "a claim that might have been alleged but was not, or a claim that more closely tracks the true factual circumstances surrounding the third-party claimant's injuries but which, for whatever reason, has not been asserted." *Pine Oak Builders, Inc. v. Great American Lloyds Insurance Company*, 279 S.W.3d 650, 655-56 (Tex. 2009). "If the petition only alleges facts excluded by the policy, the insurer is not required to defend." *Id.* at 655 (citation and internal quotation marks omitted). The court must not "(1) read facts into the pleadings, (2) look outside the pleadings, or (3) imagine factual scenarios which might trigger coverage." *Gore Design Completions, Limited v. Hartford Fire Insurance Company*, 538 F.3d 365, 369 (5th Cir. 2008) (citation and internal quotation marks omitted). On the other hand, the factual allegations that are contained within the pleadings must be liberally construed: "If the petition does not state facts sufficient to bring the case clearly within or outside the insured's coverage, the insurer is obligated to defend if *potentially*

there is a claim under the complaint within the coverage of the insured's policy." *Gulf Coast Marine Associates*, 252 S.W.3d at 454 (citing *Merchants Fast Motor Lines*, 939 S.W.2d at 141) (emphasis in original).  A court may draw reasonable inferences from the pleadings that trigger an insurer's duty to defend, *id.* at 456, and doubts about whether "'the allegations of a complaint against the insured . . . [are] sufficient to compel the insurer to defend the action . . . will be resolved in [the] insured's favor,'" *Merchants Fast Motor Lines*, 939 S.W.2d at 141 (quoting *Heyden Newport Chemical Corporation v. Southern General Insurance Company*, 387 S.W.2d 22, 26 (Tex. 1965)). The net result is that insurers are advised to chart a cautious course:  "When in doubt, defend," *Gore Design Completions*, 538 F.3d at 369.

### 4.  *Duty to Indemnify*

The duty to indemnify is separate from and narrower than the duty to defend. See *Lincoln General Insurance Company v. Aisha's Learning Center*, 468 F.3d 857, 858 (5th Cir. 2006).  Liability is not based solely on the pleadings but upon the actual facts that underlie the cause of action and result in liability.  *Trinity Universal Insurance Company v. Cowan*, 945 S.W.2d 819, 821 (Tex. 1997); see also *Heyden*, 387 S.W.2d at 25.  Thus, "the duty to indemnify only arises after an insured has been adjudicated, whether by judgment or settlement, to be legally responsible for damages in a lawsuit." *Collier v. Allstate County Mutual Insurance Company*, 64 S.W.3d 54, 62 (Tex. App.--Fort Worth 2001, no pet.).

- 10 -

B.  <u>Application</u>

Under the AXIS policy, AXIS agrees to pay:

> [T]hose sums in excess of the **Retention** and within the
> applicable Limit of Insurance stated in Item 5 on the
> Declarations Page that any **Insured**, in performing
> **Insured Services** for others, becomes legally obligated to
> pay as **Damages** or **Claim Expenses** because of **Claims** as
> a result of the following conduct:
>
>> 1.  A negligent act, error or omission;
>>
>> 2.  Oral or written publication of material
>> that slanders or libels a person or organization
>> or disparages a person's or organization's
>> goods, products or services;
>>
>> 3.  Oral or written publication of material
>> that violates a person's right to privacy;
>>
>> 4.  False arrest, detention or imprisonment;
>>
>> 5.  Wrongful entry into or eviction of a
>> person from a room, dwelling or premises that
>> the person occupies; or
>>
>> 6.  Malicious prosecution.

Policy at AXIS App 006 (emphasis in original).  The conduct at issue in this case can only fall under "[a] negligent act, error or omission."  The Claimant defendants have made numerous allegations relating to the Halo defendants' conduct that, taken as true, would qualify as "negligent act[s], error[s], or omission[s]."  *See, e.g.*, Petition ¶ 121 ("Defendants negligently failed to ensure that Temme was purchasing mortgages even though Defendants knew or should have known that Plaintiffs were

providing funds to Temme to participate in Halo's business model."). The more important issue is whether those negligent acts were done in the performance of "Insured Services."

The AXIS policy defines "Insured Services" as

> Mortgage broker services consisting of counseling, taking of applications, obtaining verifications and appraisals, loan processing and origination services in accordance with lender and investor guidelines and communicating with the borrower and lender. Debt settlement and credit services including arbitration and negotiations; real estate sales and brokerage services. Content and services via www.myhalogroup.com, www.halocreditsolutions.com, www.halodebtsolutions.com and www.morningstarmtg.net.com.

Policy at AXIS App 002, 012. The parties dispute whether the Halo defendants' actions occurred in pursuit of "Insured Services." AXIS argues that there are no allegations relating to "[d]ebt settlement and credit services including arbitration and negotiations; real estate sales and brokerage services," nor are there allegations relating to any of the listed websites. Motion for Summary Judgment Brief at 8. The Claimant defendants only challenge this statement based on the "real estate sales and brokerage services" provision; the Claimant defendants argue that "to the extent a mortgage is a security interest in real property, Claimants clearly also allege that the Halo defendants were negligent in connection with real estate sales and brokerage services." Response Brief ¶ 28. The court cannot conclude that the parties truly intended for "real estate sales and brokerage services" to apply to mortgage

investment schemes; the provision unambiguously refers to the purchase and sale of real property.

The parties' primary disagreement centers on the remaining "mortgage broker services" provision of the Insured Services definition.  AXIS argues that the description of mortgage broker services as "consisting of counseling, taking of applications, obtaining verifications and appraisals, loan processing and origination services in accordance with lender and investor guidelines and communicating with the borrower and lender" is an exhaustive definition.  Motion for Summary Judgment Brief at 8.  AXIS asserts that the underlying action "arises from an investment scenario gone wrong" and does not involve the performance of these mortgage broker services.  *Id.*  The Claimant defendants, by contrast, argue that "mortgage broker services" is not defined in the AXIS policy; rather, the Claimant defendants insist, the phrases following "consisting of . . ." are merely an incomplete list of examples of mortgage broker services.  Response Brief ¶ 10.  The Claimant defendants instead look to the dictionary definitions of terms in the "mortgage broker services" provision.

To assert that the underlying action falls under mortgage broker services, the Claimant defendants rely on dictionary definitions from a non-legal dictionary.  The Claimant defendants argue, for example, that a "broker" is "a person who functions as an intermediary between two or more parties in negotiating agreements, bargains, or

the like," and that "processing" is a "systematic series of actions directed to some

end."  Response Brief ¶¶ 23, 26.  The court does not doubt that the Halo defendants

in some way behaved as an intermediary or that the Halo defendants engaged in a

"series of actions."  But, these are generic and overly broad definitions of single words

isolated from the mortgage context.  The Claimant defendants may not simply

remove a single word from its setting and treat its individual meaning as dispositive.

See *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994).  It would be

difficult to dream up a situation in which a party did not take a "series of actions

directed to some end."

    Black's Law Dictionary defines a mortgage broker as "[a]n individual or

organization that markets mortgage loans and brings lenders and borrowers together.

*A mortgage broker does not originate or service mortgage loans*."  *Black's Law Dictionary* (9th

ed. 2009) (emphasis added), *available at* Westlaw BLACKS.  In this case, however,

the Halo defendants' role was exactly that: to "process and service the mortgages

purchased by Temme and Stewardship GP."  Petition ¶ 32.  The partnership between

the Halo defendants, Temme, and Stewardship GP was not engaged in marketing

mortgage loans; they were in fact engaged in quite the opposite -- purchasing

mortgages to collect on them.  *Id.* ¶¶ 31-33.

    The allegations in the underlying action are fundamentally based on the Halo

defendant's misuse of the Claimant defendant's invested funds, not in mortgage

- 14 -

broker services.  Taking the allegations in the petition as true, none of the funds even went to purchase mortgages.  Petition ¶ 78.  The fact that the proposed investment scheme was supposed to involve mortgages does not overshadow the fact that the allegations ultimately stem from fraud and misappropriation of funds.

Since the claims in the underlying action fall outside of the Insured Services as defined in the AXIS policy, the court does not reach AXIS's alternate argument that the underlying action falls within exclusions to coverage.  There remains no genuine issue of material fact as to AXIS's duty to defend; therefore, the court grants summary judgment on that claim.

AXIS also cites *Farmers Texas County Mutual Insurance Company v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997), to support its argument that it has no duty to indemnify because there is no duty to indemnify if the same facts that negate the duty to defend also negate the duty to indemnify.  *See* Motion for Summary Judgment Brief at 6. However, "the holding in *Griffin* was fact-specific and cannot be construed so broadly."  *D.R. Horton-Texas, Limited v. Markel International Insurance Company, Limited*, 300 S.W.3d 740, 744 (Tex. 2009).  "[A]n insurer may have a duty to indemnify its insured even if the duty to defend never arises."  *Id.* at 741.  "[U]nlike the duty to defend, which turns on the pleadings, the duty to indemnify is triggered by the actual facts establishing liability in the underlying suit, and whether any damages caused by the insured and later proven at trial are covered by the terms of the policy."  *Colony*

- 15 -

*Insurance Company v. Peachtree Construction, Limited*, 647 F.3d 248, 253 (5th Cir. 2011).  Since liability has not been established in the underlying action, the court must deny the plaintiff's motion for summary judgment on the duty to indemnify.

III.  <u>CONCLUSION</u>

For the reasons stated above, the plaintiff's motion for summary judgment is **GRANTED** as to the duty to defend and **DENIED** as to the duty to indemnify.

**SO ORDERED**.

September 27, 2013.

A. JOE FISH
**Senior United States District Judge**